UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| P.S.,<br>   Plaintiff,<br> v.<br>KILOLO KIJAKAZI,<br>   Defendant. | Case No. 23-cv-04054-SVK<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 10, 12 |

Plaintiff P.S. appeals from the final decision of Defendant Commissioner of Social Security, which denied her applications for disability insurance benefits and supplemental security income. The Parties have consented to the jurisdiction of a magistrate judge. *See* Dkts. 7-8. For the reasons discussed below, the Court **DENIES** Plaintiff's motion for summary judgment (the "Motion" at Dkt. 10) and **GRANTS** Defendant's cross-motion for summary judgment (the "Cross-Motion" or "Opposition" at Dkt. 12).

**I. BACKGROUND**

In April 2021 and March 2022, respectively, Plaintiff filed applications for Title II disability insurance benefits and Title XVI supplemental security income, alleging a disability onset date of February 28, 2020. *See* AR 17.[1] Defendant denied Plaintiff's applications on October 7, 2021 and request for reconsideration of those denials on December 8, 2021. *See id.* Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") to reassess her claim. *See id.* Plaintiff appeared for a telephonic hearing before an ALJ on May 26, 2022. *See id.* at 35-62 ("Hr'g Tr.").

The ALJ denied Plaintiff's claim on October 19, 2022. *See* AR 14-34 (the "ALJ

---

[1] The Administrative Record is available at Dkts. 9 through 9-8.

Decision"). He found that Plaintiff had the following severe impairments: "myofascial pain syndrome; primary osteoarthritis of the right knee; cervical degenerative disc disease with myofascial discomfort and radiculopathy; lumbar degenerative disc disease; De Quervain's tenosynovitis; somatic symptom disorder with predominant pain; and tendinitis of the right peroneal tendon." *See id.* at AR 20-22. He also found that these impairments (both individually and in combination) do not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. Section 404, Subpart P, Appendix 1. *See id.* at AR 22-23. He then found that Plaintiff maintains a residual functional capacity ("RFC") "to perform light work," but with certain limitations. *See id.* at AR 23-27. Finally, he found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *See id.* at AR 27-28. In light of these finding, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from February 28, 2020, through the date of" the ALJ Decision. *See id.* at AR 28.

Plaintiff subsequently requested that the Appeals Council review the ALJ's decision, and the Appeals Council denied Plaintiff's request. *See* AR 1-6. Plaintiff then timely filed an appeal to this Court seeking review of the ALJ Decision. *See* Dkt. 1. Now before the Court are Plaintiff's Motion and Defendant's Cross-Motion, which were filed pursuant to Civil Local Rule 16-5 and are ready for decision without oral argument.[2]

## II.   ISSUE FOR REVIEW

In this Order, the Court reviews the following issue: Did the ALJ err in failing to find Plaintiff disabled under Rule 201.14 of 20 C.F.R. Section 404, Subpart P, Appendix 2 (the "Grids")?

///

---

[2] Plaintiff appears to have filed the Motion one day late. Civil Local Rule 16-5 required Plaintiff to file the Motion "[w]ithin 28 days of receipt of defendant's answer." Defendant filed its answer on October 6, 2023. *See* Dkts. 5 (Defendant may file administrative record in lieu of answer), 9 (administrative record). 28 days after October 6, 2023 fell on Friday, November 3, 2023. But Plaintiff did not file the Motion until Monday, November 6, 2023. *See* Motion. Nevertheless, Defendant does not object to the Motion as untimely filed, and the Court considers the one-business-day delay in filing to be non-prejudicial to Defendant.

### III. STANDARD OF REVIEW

The Court is authorized to review Defendant's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (citation omitted). The Court's limited role allows it to disturb an ALJ's decision only if that decision is (1) not supported by substantial evidence or (2) based on the application of improper legal standards. *Id.*

**Not Supported By Substantial Evidence.** "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted); *see also Rounds v. Comm'r SSA*, 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' and 'must be "more than a mere scintilla," but may be less than a preponderance.'" (citation omitted)). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from [Defendant's] conclusion." *Rounds*, 807 F.3d at 1002 (citation omitted). But where "the evidence is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Id.* (citation omitted).

**Application Of Improper Legal Standards.** Even if an ALJ commits legal error, the Court will uphold the ALJ's decision if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id.* (citations omitted).

///

///

///

3

## IV. DISCUSSION

At Step Five of the five-step process applied by Defendant in evaluating a claimant's disability, an ALJ must consider a claimant's RFC, age, education and work experience "to see if [they] can make an adjustment to . . . work" other than work they have performed in the past. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Defendant bears the burden of proof at Step Five. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Defendant can meet this burden either "(1) by the testimony of a vocational expert, or (2) by reference to the" Grids. *See Maxwell v. Saul*, 971 F.3d 1128, 1130 (9th Cir. 2020) (citation omitted). "Where a claimant suffers only exertional limitations" or "from both exertional and non-exertional limitations, the ALJ <u>must</u> consult the grids first." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006) (emphasis added) (citations omitted).

The ALJ found that Plaintiff suffers from both exertional and non-exertional limitations. *See* ALJ Decision at AR 23-27 (describing Plaintiff's strength and postural limitations); *see also Lounsburry*, 468 F.3d at 1115 (explaining that (1) exertional limitations impair a claimant's ability to "meet[] the strength requirements of jobs" and (2) non-exertional limitations include "postural and manipulative limitations such as difficulty reaching, handling, stooping, climbing, crawling, or crouching"). Thus, the ALJ properly considered the Grids in his analysis. And because the ALJ found that Plaintiff could perform light work, he evaluated Table 2 of the Grids. *See* ALJ Decision at AR 28 (evaluating Grids Rules 202.14 and 202.21); Grids at Table 2 ("Residual Functional Capacity: Maximum Sustained Work Capability Limited to Light Work"). Because the Grids Rules applied by the ALJ directed a finding of no disability, the ALJ correctly proceeded to evaluate the opinions of the vocational expert (the "VE"). *See* ALJ Decision at AR 28; *Lounsburry*, 468 F.3d at 1116 (ALJ may evaluate testimony of VE only after mandatory application of Grids would yield finding of no disability).

However, the ALJ also found that Plaintiff's "ability to perform all or substantially all of the requirements of th[e light] level of work has been impeded by additional limitations." *See* ALJ Decision at AR 28. The ALJ did not elaborate on the level of impediment and instead relied on the VE's testimony to determine whether Plaintiff could nevertheless perform some light-level

4

jobs (*see id.*), but clearly, based on the ALJ's findings, Plaintiff can perform somewhere below a light level of work. The question is: Just how far below a light level of work can Plaintiff perform? The answer to that question is key because, as explained below, if Plaintiff's capabilities are eroded enough, the Grids will compel a finding of disability.

Plaintiff and Defendant agree that either Grids Rules 201.14 or 202.14 apply to Plaintiff. If Plaintiff can perform only a sedentary level of work, then Rule 201.14 applies, which requires a finding of disability. However, if Plaintiff can perform a light level of work, then Rule 202.14 applies, which requires a finding of no disability. Because Plaintiff's abilities fall somewhere in between sedentary and light work, she finds herself in a regulatory limbo between the two Rules. Fortunately, Social Security Ruling ("SSR") 83-12 comes to the rescue and commands that the ALJ evaluate where exactly Plaintiff's abilities lie:

- If her "exertional capacity . . . is only slightly reduced" below the light level, the SSR counsels in favor of a finding of no disability under the higher-numbered Rule (here, Rule 202.14).
- If her "exertional capacity is significantly reduced" below the light level, the SSR counsels in favor of a finding of disability under the lower-numbered Rule (here, Rule 201.14).

Further, the SSR provides that where, as here, Plaintiff's "exertional limitations are somewhere 'in the middle' . . ., more difficult judgments are involved [and VE] . . . assistance is advisable." *See, e.g.*, *Moore v. Apfel*, 216 F.3d 864, 870-71 (9th Cir. 2000) (applying SSR 83-12's framework).[3]

Thus, under SSR 83-12, the ALJ properly considered the VE's testimony in evaluating whether Plaintiff's position on the light-sedentary spectrum precluded her from performing light-level work. *See, e.g.*, *Ray A.B. v. Comm'r SSA*, No. 19-cv-00837-YY, 2020 WL 6820799, at *7 (D. Or. Nov. 20, 2020) (ALJ properly considered VE testimony where plaintiff's exertional

---

[3] The Parties discuss application of Defendant's Program Operations Manual System ("POMS") instead of SSR 83-12. *See* Motion at 8-10; Opposition at 4-5; POMS DI 25025.015. "While similar, SSR 83-12 is more detailed and more comprehensive than POMS DI 25025.015." *Sankhar v. Colvin*, No. 14-cv-01644-HZ, 2015 WL 5664285, at *6 (D. Or. Sept. 21, 2015). Further, SSRs are "binding on all components of the Social Security Administration" (*Gamble v. Chater*, 68 F.3d 319, 321 n.1 (9th Cir. 1995) (citation omitted)), while "[t]he POMS does not have the force of law" (*Warre v. Comm'r of SSA*, 439 F.3d 1001, 1005 (9th Cir. 2006) (citation omitted)). The Court, therefore, applies SSR 83-12.

1  limitations fell between sedentary and light levels).  The VE opined that Plaintiff could perform at
2  least three specific jobs classified as light-level work when considering the limitations found by
3  the ALJ.  *See* Hr'g Tr. at AR 58-59.  Therefore, the ALJ permissibly found no disability at Step
4  Five.

5       Plaintiff argues that the ALJ should have found her RFC of light work to be significantly
6  reduced, which would result in application of Rule 201.14 and a finding of disability.
7  Specifically, she points to several of the ALJ's findings that indicate her RFC falls below a light
8  level of work.  *See* Motion at 8-9.  However, these findings merely support the conclusion that
9  Plaintiff's RFC falls somewhere in between a light and sedentary level and do not clearly support
10  a finding of either slight or significant reduction.  While the ALJ potentially could have found
11  Plaintiff to be closer to a sedentary RFC than a light RFC on the evidence before him, he opted to
12  rely on the testimony of the VE, and the Court will not second-guess that decision.  *See, e.g.*,
13  *Moore*, 216 F.3d at 871 ("[E]ven assuming that the evidence rationally supports Moore's
14  argument, it also clearly supports the ALJ's decision to use a VE [under SSR 83-12], and his
15  subsequent ruling."); *see also Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) ("Even if the
16  evidence is 'susceptible to more than one rational interpretation, it is the ALJ's conclusion that
17  must be upheld.'" (citation omitted)).

18       Plaintiff offers three additional arguments, but the Court rejects them all.

19       ***First***, Plaintiff argues that the VE's testimony actually supports a finding that her RFC
20  remains closer to a sedentary level than a light level, because the VE opined that there are only a
21  few light-level jobs that she can perform.  *See* Motion at 9; *see also* Hr'g Tr. at AR 58-59.  The
22  Court does not agree that the availability of only a few categories of light-level jobs indicates that
23  Plaintiff falls closer to the sedentary end of the light-sedentary spectrum.  Indeed, the VE opined
24  that Plaintiff could perform light-level work.  Even if the Court agreed with Plaintiff, the ALJ
25  could reasonably disagree, and the Court must defer to his decision in that regard.

26       ***Second***, Plaintiff argues that "even with the three occupations that the VE found, the job
27  numbers for each had to be eroded by fifty percent to accommodate an individual who requires the
28  option to sit or stand at will," resulting in an exceedingly small number of available positions that

she could perform among the three jobs identified by the VE. *See* Motion at 9-10. However, the ALJ accounted for this fifty-percent erosion in his decision. *See* Hr'g Tr. at AR 59; ALJ Decision at AR 28.

***Third***, Plaintiff argues that the small number of positions available to her under the VE's opinion "would be more accurately described as sedentary, rather than as light level positions," in light of the fact that someone with her limitations could work in those positions. *See* Motion at 10. Yet the ALJ could also reasonably reach the opposite conclusion, *i.e.*, because Plaintiff could work in the identified light-level jobs even with her limitations, she is necessarily capable of performing light-level work. Plaintiff's reliance on *Betanco v. Berryhill*, No. 17-cv-01709-SS, 2018 WL 3490786 (C.D. Cal. July 19, 2018) to support this argument is misplaced. There, the VE opined that the plaintiff could work in three jobs ordinarily classified as light, but reduced the number of available positions in which she could work because of her need to be seated for six hours in an eight-hour workday. *See id.* at *4. The *Betanco* court, accordingly, reasonably questioned whether the VE's identified "positions truly constitute light work or are . . . more properly described as sedentary work." *See id.* Here, however, the VE identified positions in which Plaintiff could work based on the ALJ's finding that Plaintiff could stand or walk for six hours in an eight-hour workday. *See* Hr'g Tr. at AR 58-59; ALJ Decision at AR 23-28. Thus, there is no reason to question whether the work of those jobs actually constitutes sedentary work.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion and **GRANTS** the Cross-Motion.

**SO ORDERED.**

Dated: February 20, 2024

SUSAN VAN KEULEN
United States Magistrate Judge